UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| FRANK PRICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:13-cv-00401-WTL-DKL |
| ) | |
| KEVIN HUNTER, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Frank Price, a former inmate of the Wabash Valley Correctional Facility ("Wabash Valley"), brings this action pursuant to 42 U.S.C. § 1983. Price alleges that defendants Kevin Hunter, Rob Marshall, Sergeant Brock, and Skye Adams, all employees of Wabash Valley, violated his rights under the Eighth Amendment to the United States Constitution when they failed to protect him from assault from a fellow inmate who was placed in his cell. Arguing that they were unaware of any substantial risk of harm to Price and did not ignore any risk of harm to him by placing the other inmate in Price's cell, the defendants move for summary judgment. For the reasons that follow, the defendants' motion for summary judgment [dkt 101] is **granted in part and denied in part**.

**I. Standard of Review**

A motion for summary judgment asks that the court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. P. 56(e). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Johnson v. Cambridge Indus.,* 325 F.3d 892, 901 (7th Cir. 2003).

## II. Facts[1]

Consistent with the foregoing, the following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Price as the non-moving

---

[1] The defendants argue that Price's declaration in support of his motion for summary judgment is so riddled with hearsay and misrepresentations of the record that it should be stricken *in toto*. Alternatively, the defendants request that they be provided another opportunity to respond to each allegation in the declaration. Each of these requests is **denied**. First, the Court disagrees that Price's declaration is so flawed that it is impossible to discern the properly supported allegations of fact. The declaration contains a number of statements of fact that are within Price's personal knowledge. To the extent that the defendants argue that the declaration contains "factual misrepresentations," it is inappropriate at this time for the Court to determine the weight or credibility of the evidence. To the extent that Price has presented allegations that are not properly supported, are based on speculation, or are not within his personal knowledge, those will not be considered. Furthermore, the request that the defendants be given a second opportunity to submit a reply in support of their motion for summary judgment not is contemplated by Rule 56 and is unnecessary.

party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

At all times relevant to his claims, Price was an inmate of Wabash Valley. Marshall was an Internal Affairs Supervisor, Hunter was a Unit Team Manager, Brock was a Master Locations Supervisor, and Adams worked in the Count Room.

On May 17, 2013, Price was moved to cell F-413. On May 22, 2013, inmate James Denning was moved into the same cell. According to Indiana Department of Correction records, Denning's move to Price's cell was initiated by Ron Wells and approved by Lee Hoefling before it was sent to the Count Room for processing.

Because of Brock's job duties and a technical function of the Offender Information System ("OIS"), both Price and Denning's transfers listed Brock on the record as the "Reason for the Move." Brock's name appears in OIS under the column "Reason for Move" for every offender move conducted by his division or those he supervises. Price asserts that Brock filled out the Offender Comparison Sheet for Double Celling with regard to Denning's move into Price's cell. But there is no evidence regarding what the sheet indicated with regard to celling Price and Denning together.

Because of her job duties and a technical function of OIS, Adams administratively inputted bed moves into the OIS database. This resulted in her name appearing in the "Authorized" column in OIS for Denning's bed move.

On June 22, 2013, Price placed a letter addressed to Hunter in the counselor's mailbox stating that he was having problems with his cellmate and that he needed to be moved away from him. Price Declaration (dkt 106) ("Price Dec.") ¶ 13. Price did not receive a response to this note. *Id.* ¶ 14. On June 24, 2013, Price placed a note to Marshall stating "I've already wrote [sic] to

Kevin Hunter about this. I am having problems with my cellmate; my cellmate has threatened me several times; my cellmate starts arguments with me; my cellmate has threatened to put his gang members on me; my cellmate is trying to run the cell; my cellmate held security while gang members robbed Jonathan Kilburn." *Id.* ¶ 15. Price did not receive a response to this note. *Id.* ¶ 16.

On July 2, 2013, Marshall received notice that Price wanted to speak with someone from the Internal Affairs Department. Marshall Declaration (dkt 103-1) ("Marshall Dec.") ¶ 5. Marshall contacted Price's caseworker, Hunter, to follow up with Price. *Id.* ¶ 6. Hunter interviewed Price on the same day. Hunter Declaration (dkt 103-2) ("Hunter Dec.") ¶ 6. Price told Hunter, among other things, that his cellmate threatened him and that he did not feel safe returning to his cell. Price Dec. ¶ 20. Price also asked for a Request for Protection form. Hunter did not provide him with the form.[2] *Id.*

Hunter informed Marshall that Price requested to be in a different recreation line. Marshall Dec. ¶ 7. Hunter submitted a request to move Price to a different recreation line. Hunter Dec. ¶ 8. On July 2, 2013, Hunter informed Price that he would be placed on a different recreation line and that Hunter had submitted a bed move request. Hunter Dec. ¶ 11.

On the afternoon of July 2, 2013, Denning assaulted Price in his cell.[3] On July 3, 2013, Price showed injuries to his face and was treated at the infirmary.

---

[2] The evidence conflicts regarding the content of the conversation between Price and Hunter. Hunter asserts that Price requested a different recreation line, while Price asserts he told Hunter that his cellmate was threatening him. For purposes of summary judgment, the evidence has been considered in the light most favorable to Price.

[3] The defendants quibble with this fact, arguing that Price has no evidence that Denning assaulted him and that he has admitted that he does not remember what happened. Price points out, however, that he was injured while locked in his cell and that the only other person in the cell with him at the time was Denning. Moreover, the defendants have assumed the truth of this fact for purposes of summary judgment.

### III. Discussion

The defendants argue that they cannot be held responsible for failing to protect Price from being attacked by Denning because they did not initiate or approve Denning's move to Price's cell and because they were not aware of any significant risk posed to Price by Denning prior to the alleged assault. The defendants further argue that they are entitled to qualified immunity on Price's claims.

#### A. *Deliberate Indifference*

The defendants first argue that they were not deliberately indifferent to risk of harm posed to Price by Denning because they were not aware of any specific threats to Price. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz,* 398 F.3d 904 (7th Cir. 2005). This duty includes protecting prisoners "from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). To succeed on a failure to protect claim such as Price's, a plaintiff must first establish, objectively, that "he was 'incarcerated under conditions posing a substantial risk of serious harm.'" *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010) (*quoting Farmer,* 511 U.S. at 834). Second, a plaintiff must establish that the defendant prison officials acted with deliberate indifference to that risk. *Id*. A prison official may be held liable only if he *knows* an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. The prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference" before he can be liable for deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

The defendants do not contest for purposes of summary judgment that Price was incarcerated under conditions posing a serious risk of harm, but argue that they were not aware of this risk and therefore cannot be found to have been deliberately indifferent to it.

      1. Brock and Adams

Brock and Adams both argue that they cannot be found to have been deliberately indifferent to any risk of harm to Price because their participation in and knowledge of Denning's move into Price's cell was merely administrative. Brock served in a supervisory capacity and Adams was the officer who updated the electronic OIS with Denning's bed move. Price responds that both were aware of the move, but provides no evidence to rebut the undisputed facts that neither Brock nor Adams had any reason to believe that Price was at risk of harm from Denning. Even assuming that Brock filled out the Offender Comparison Sheet for Double Celling, as Price asserts, there is no evidence that anything in the comparison sheet would have caused Brock to believe that Price would be at risk. Further, there is no evidence that Adams was aware of any risk. Because there is no evidence to support a conclusion that either Brock or Adams was aware of any risk to Price, each of these defendants is entitled to summary judgment.

      2. Marshall and Hunter

Marshall and Hunter also argue that they were not aware of any specific threats to Price and therefore cannot be found to have been deliberately indifferent to the risk of harm to him. The facts are hotly contested, however, regarding Marshall and Hunter's knowledge of the risk of harm to Price. Marshall and Hunter both assert that Price raised only generalized concerns with them regarding threats he was receiving from other inmates in his recreation line. Price responds that he told both of them that he was facing threats from his cellmate, that he was afraid of his cellmate, and that he wished to be moved.

The defendants make much of the fact that Price testified at his deposition that he had no "evidence" that Hunter or Marshall were aware of the risk of harm to him and argue that this entitles them to summary judgment. For example, with regard to Marshall's knowledge, Price testified at his deposition as follows:

> Q. Do you have any evidence that Rob Marshall knew that James Denning would beat you up?
> A. Yeah.
> Q. What evidence is that?
> A. I mean he – well, no, I don't have the evidence because I don't know where the evidence went.
> Q. I'm going to ask you one more time. Do you have any evidence that Rob Marshall was aware that James Denning was going to beat you up?
> A. I mean the evidence was the note that I sent him. That was enough to give him knowledge that something would happen.
> Q. I am going to ask you one last time. Do you have any evidence that Rob Marshall knew that James Denning was going to beat you up?
> A. No.

The defendants appear to be quibbling with Price over the definition of the word "evidence." A fair reading of this testimony is an admission that Price does not have any physical evidence, in the form of the note he asserts he submitted to Marshall, that Marshall was made aware of the risk. But Prices does have evidence, in the form of his own testimony, that these defendants were made aware of the risk of harm. Specifically, Price may rely on his testimony that he submitted the note to Marshall as evidence to support the conclusion that he told Marshall that his cellmate was threatening him. This is sufficient to raise a dispute of fact regarding Marshall's knowledge of the risk. Similarly, Price's own affidavit testimony that he submitted a note to Hunter stating that he was having problems with his cellmate and needed to be moved away and that in his interview with Hunter, he stated that he feared that his cellmate would harm him and asked for a Request for

Protection Form is sufficient evidence to raise a dispute of fact regarding Hunter's knowledge of the risk.

The defendants also argue that any information Price gave them regarding the risk that Denning would assault him was not specific enough to make them aware of the risk. The defendants rely on *Brown v. Budz*, 398 F.3d 904, 914-15 (7th Cir. 2005), for the proposition that to be held liable for failure to protect prison officials must have knowledge of a specific threat from a specific source. In that case, a resident of Illinois Department of Human Services' Sexually Violent Persons and Detention Facility was attacked by a fellow, mentally-ill resident. In reviewing the district court's ruling on the defendants' motion to dismiss, the Seventh Circuit found that the plaintiff had stated a claim for failure to protect, explaining that:

> typical deliberate indifference claims assert that a defendant-custodian failed to take protective action after a plaintiff-detainee complained of a feared threat posed by rival gang members or a specific person. *See, e.g., Butera v. Cottey,* 285 F.3d 601 (7th Cir.2002); *Lewis v. Richards,* 107 F.3d 549 (7th Cir.1997); *Haley v. Gross,* 86 F.3d 630 (7th Cir.1996); *Jelinek v. Greer,* 90 F.3d 242 (7th Cir.1996). Another common fact pattern found in our failure to protect cases finds deliberate indifference arising out of improper cell assignments, where the defendant custodian places an unwitting detainee in a cell with another detainee whom the custodian knows to have certain violent propensities. *See, e.g., Weiss v. Cooley,* 230 F.3d 1027 (7th Cir.2000); *Billman v. Ind. Dept. of Corr.,* 56 F.3d 785 (7th Cir.1995); *Zarnes v. Rhodes,* 64 F.3d 285 (7th Cir.1995). In these types of cases, the victim and assailant are readily identifiable, and the custodian's deliberate indifference is based upon knowledge of a clearly particularized risk.

*Id.* at 914-15. The Court went on, however, to "reject defendants' suggestions that deliberate indifference requires either the threatened detainee to advise his custodians of a pending threat, or a custodial officer to know in advance the identity of the particular plaintiff at risk." *Id.* at 915. Here, Price does in fact allege that he told Marshall and Hunter that he was receiving threats from Denning. These allegations fall squarely within the "typical deliberate indifference claims"

8

discussed in *Brown* and there is no need at this time to determine whether Marshall and Hunter should otherwise have been aware of the risk.

The defendants also rely on *Whaley v. Erickson*, 2009 WL 222084, *2 (7th Cir. 2009), to argue that letters sent to prison officials are insufficient to alert them to a potential threat of harm. In that case, the Seventh Circuit concluded that letters complaining of a cellmate's behavior and other allegations that the cellmate was "making threats" without more are insufficient to notify a prison official that an inmate posed a substantial risk of harm. In contrast to the complaints made in *Whaley*, the complaints Price alleges here are more specific. He does not state merely that he complained to Marshall and Hunter regarding Denning's behavior, but instead he attests that he told each of them of specific threats Denning made to him.

The evidence construed in the light most favorable to Price is that he submitted a note to Hunter that he was having problems with his cellmate and that he needed to be moved away from him and that when Hunter interviewed him, he stated that his cellmate was threatening him and that he was afraid to return to his cell and requested a protection form. Based on these assertions, a reasonable jury could conclude that Hunter was aware of a specific risk of harm to Price. With regard to Marshall, Price asserts that he submitted a note to Marshall stating "I've already wrote [sic] to Kevin Hunter about this. I am having problems with my cellmate; my cellmate has threatened me several times; my cellmate starts arguments with me; my cellmate has threatened to put his gang members on me; my cellmate is trying to run the cell; my cellmate held security while gang members robbed Jonathan Kilburn."[4] Viewing this evidence in the light most favorable to

---

[4] The defendants also make much of the fact that Price did not specifically state to Hunter that he was having issues with "James Denning." But Price has submitted evidence that he told Hunter that he was having problems with his cellmate. This is a specific enough allegation of risk considering the fact that there is no dispute that James Denning was Price's one and only cellmate at the time.

9

Price, the Court concludes that a reasonable jury could find that Marshall and Hunter were aware of a risk of harm to Price. Marshall and Hunter are therefore not entitled to summary judgment on this claim.

  B. *Qualified Immunity*

The defendants go on to argue that because they were unaware of any risk of harm to Price, they are entitled to qualified immunity on his claims.

In evaluating a claim of qualified immunity, a court conducts a two-step inquiry: "First the court must determine whether the disputed conduct, as alleged, violates a constitutional right; second, the court must determine whether that right was 'clearly established' at the time of the alleged conduct." *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005). "In other words, the plaintiff must show not only that her constitutional rights were violated, but that any reasonable official under the circumstances would have realized that her rights were being violated." *Easterling v. Pollard*, 528 Fed.Appx. 653, 656-57 (7th Cir. 2013). "To be clearly established at the time of the challenged conduct, the right's contours must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,' and 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013) (quoting *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012)). It is clearly established law that failure to protect an inmate from harm violates the Eighth Amendment's prohibition of cruel and unusual punishment if prison officials act with deliberate indifference to the prisoner's welfare by doing nothing and effectively allowing an attack to happen. *See Borello v. Allison,* 446 F.3d 742, 749 (7th Cir. 2006) (citations and quotation omitted). There is a dispute of fact as to whether or not Hunter and Marshall violated this right here. Accordingly, their motion for summary judgment asserting qualified immunity

10

must also be **denied.** *See Gonzalez v. City of Elgin,* 578 F.3d 526, 540 (7th Cir.2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial.").

## IV. Conclusion

The defendants' motion for summary judgment [dkt 101] is **granted in part and denied in part**. **The motion is granted to the extent that defendants Brock and Adams are entitled to summary judgment and Price's claims against them are dismissed. The motion is denied as to the claims against Marshall and Hunter.** No partial final judgment shall issue as to the claims resolved in this Entry.

The plaintiff's motion to address [dkt 112] is **denied as unnecessary** and the defendants' motion to strike [dkt 116] is **denied as moot**.

The Court will set a trial date through a separate order and will attempt to recruit counsel to represent the plaintiff at the trial.

**IT IS SO ORDERED.**

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Date: 12/28/15

Distribution:

FRANK PRICE
DOC # 108694
Westville Correctional Facility
Electronic Service Participant -- Court Only

All electronically registered counsel